# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOHN C. LUNA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **USAA CASUALTY INSURANCE** | § | **SA-05-CV-0501 OG** |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   Hon. Orlando Garcia**
**United States District Judge**

### I.  Introduction

The matters before the Court are defendant USAA Casualty Insurance Company's motion for summary judgment (Docket Entry 28) and objections to plaintiff John C. Luna's summary judgment evidence (Docket Entry 32).[1]  Defendant filed its motion for summary judgment on May 5, 2006,[2] and plaintiff responded to defendant's summary judgment motion on May 30, 2006.[3]  Subsequently, defendant filed its reply and objections to plaintiff's summary judgment evidence.[4]  After considering the motion, response, reply, and the entirety of the record in this

---

[1] Defendant included objections to plaintiff's summary judgment evidence in its reply document.  The objections will be discussed in this Memorandum and Recommendation, but a separate Order will be entered contemporaneously with the Memorandum and Recommendation disposing of the objections.

[2] Docket Entry 28.

[3] Docket Entry 29.

[4] Docket Entry 32.

matter, it is my recommendation that defendant's motion for summary judgment be **DENIED**.

I have authority to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order in which defendant's motion for summary judgment  was referred to me for review and recommendation.[5]

## II. **Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the statute conferring federal question jurisdiction, and 29 U.S.C. § 626(c)(1) of the Age Discrimination in Employment Act of 1967 ("ADEA").

## III. **Procedural History**

Plaintiff commenced the instant action alleging employment discrimination in violation of the ADEA and Title VII of the Civil Rights Act of 1964 ("Title VII") by filing a complaint on May 27, 2005.[6]  On November 30, 2005, plaintiff filed a motion requesting leave to amend his complaint, which was granted by Order of the District Court on December 7, 2005.[7]  Plaintiff's amended complaint was filed the same day.[8]  The amended complaint abandoned the Title VII cause of action and retained the age discrimination action pursuant to the ADEA.[9]

## IV. **Issue Presented**

_____

[5] Docket Entry 33.

[6] Docket Entry 1.

[7] Docket Entries 10 and 15.

[8] Docket Entry 16.

[9] **Id.** at ¶ 1.

Has plaintiff demonstrated genuine issues of material fact for trial
that defendant committed an unlawful employment practice under
the ADEA by terminating plaintiff's employment based on his age?

## V. <u>Undisputed Facts</u>

Defendant is a Texas company engaged in the insurance business, and it formerly employed plaintiff as a casualty claims adjuster.  Plaintiff was over forty years of age when defendant terminated his employment.[10]

Plaintiff worked for defendant for over ten years.  He began employment as a Policy Service Representative in 1993.[11]  Plaintiff became a casualty claims adjuster approximately nine months after commencing employment with defendant.[12]  As an automobile claims adjuster, plaintiff's duties included: obtaining claims from insured parties or third party claimants; taking information concerning claims; investigating claims to determine liability; verifying coverage; acting appropriately on claims (either paying or denying claims); and ultimately closing claim files.[13]  Plaintiff contacted and took statements from policyholders, claimants, and witnesses.  He also contacted and corresponded with attorneys representing parties concerned about claims. Plaintiff also obtained police reports, and if a claim was paid, he obtained releases and other required documents.[14]

In resolving claim issues, plaintiff had the responsibility of responding to settlement

---

[10] <u>Id.</u> at ¶¶ 6, 7.

[11] Docket Entry 28, Exh. 1 at 25.

[12] <u>Id.</u> at 49.

[13] <u>Id.</u> at 85.

[14] <u>Id.</u> at 85-86; Docket Entry 29, Exh. 1.

demands.  Settlement demands from a claimant consisted of two types applicable to this case: (1) settlement demands that did not contain a specified time limit for response for which defendant's procedures required adjusters to respond within thirty days ("untimed demands"), and (2) settlement demands that required a response by a specific date or time ("time limit demands").[15] According to company procedures, plaintiff entered all settlement demands into his computer diary.  He calendared the untimed demands to notify him of the thirty-day deadline for response.[16]  Plaintiff also entered time limit demands on the manager's ledger and kept the time limit demands on the top of his pending work pile on his desk.[17]  The extra precautions taken for time limit demands were due to the additional liability to which defendant could potentially be exposed if it failed to timely and appropriately respond to a settlement offer.[18]

Over the course of his employment with defendant, plaintiff received favorable performance evaluations, raises, and bonuses, including three years while he was in the protected age group.[19]  He did not have a history of active disciplinary actions at the time defendant terminated his employment.[20]  However, plaintiff's evaluations advised that he needed improvement in working the mail in a timely manner, and one of his supervisors, Margaret

---

[15] Docket Entry 28, Exh. 6.

[16] Docket Entry 28, Exh. 1 at 90-91.

[17] **Id.** at 93.

[18] Docket Entry 28, Exh. 6; Exh. 2 at 1-2.

[19] Docket Entry 28, Exh. 1 at 56; Docket Entry 29, Exh. 1.

[20] Docket Entry 29, Exh. 1; Hill Deposition at 12.

Swanner ("Swanner")[21] verbally cautioned him about responding to untimed demands.[22]

Sometime in October 2003, plaintiff approached his immediate supervisor, Alex Hill ("Hill"), with a coverage question on a property damage claim.[23]  Plaintiff prepared a "coverage sheet," which Hill reviewed and forwarded to his director, Swanner.  While reviewing the coverage issue, Swanner identified a time limit demand that had not been addressed.[24]  Plaintiff admitted that he missed the deadline on the time limit demand by "a couple of months."[25]

Under company procedures, a missed time limit demand will trigger a desk audit of the files assigned to the claims adjuster responsible for the missed deadline.[26]  According to plaintiff, a desk audit is a procedure performed by members of management after normal working hours. The management team reviews the adjuster's files to determine whether the adjuster is complying with defendant's policies and procedural guidelines.[27]

After learning that plaintiff had missed a deadline in a time limit demand, management performed a desk audit of plaintiff's files.  Hill and two other managers performed the desk audit and determined that plaintiff had missed deadlines in two time limit demands and eighteen untimed demands.[28]

---

[21] Swanner was formerly known as Margaret Brissette.

[22] Docket Entry 28, Exh. 1 at 189, 190, 203, and 208; Docket Entry 29, Exh. 1 at 1.

[23] Docket Entry 28, Exh. 3 at 29.

[24] **Id.**

[25] Docket Entry 28, Exh. 1 at 145.

[26] Docket Entry 28, Exh. 4 at 182.

[27] Docket Entry 28, Exh. 1 at 141-142.

[28] Docket Entry 28, Exh. 3 at 93-94, 96.

Hill reported the results of the desk audit of plaintiff's files to Swanner, Ken Rosen ("Rosen") and Anna Werner ("Werner").  During the management meeting, Hill, Swanner, Rosen, and Werner agreed to terminate plaintiff's employment.[29]  According to Hill, management did not consider any information concerning plaintiff's work history with the company.[30]  On October 28, 2003, defendant terminated plaintiff's employment.[31]

Plaintiff does not dispute that he missed the time limit and untimed demands deadlines,[32] or that missing the deadlines violated defendant's policies.[33]  Plaintiff believed that he would receive a verbal warning under defendant's progressive disciplinary policy.[34]  Defendant's progressive disciplinary policy provides for an initial counseling (Step 1), a written warning (Step 2), a final warning (Step 3) and/or immediate termination of employment.  However, the disciplinary policy expressly provides that defendant was not required to follow the progressive process, and the action taken would depend on the seriousness of the situation and other existing corrective actions.[35]

Plaintiff attributed the  missed time limit demands and untimed demands to the dramatic increase in workload that all the claims adjusters experienced.  At various times, beginning in

---

[29] **Id.** at 81; Exh. 8.

[30] Docket Entry 28, Exh. 3 at 81.

[31] Docket Entry 29, Exh. 5.

[32] Docket Entry 29 at 2 n.1.

[33] Docket Entry 28, Exh. 1 at 102, 218.

[34] **Id.** at 227-228.

[35] Docket Entry 28, Exh. 7.

2000 or 2001, defendant reorganized its structure resulting in the layoff of employees.[36]  The layoff of claims adjusters resulted in an increased workload for the remaining employees.[37]

In order to meet the added workload, the employees and their managers requested overtime hours to complete their work.[38]  Furthermore, employees worked through lunches, breaks, and after hours "off the clock" (without pay) to keep up with their workloads.[39]

The claims adjusters complained to their managers about their increased workload and that they felt overwhelmed.[40]  Defendant knew that the claim adjusters were struggling to meet their deadlines.  Management responded with promises to hire additional staff to lower the average pending claims assigned to each claims adjuster.[41]  Defendant began to recruit college graduates through an "associate adjuster" program to fill positions with the company.  Part of the program involved recruiting college graduates with specific business skills to become claims adjusters.[42]

After his discharge, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination in violation of Title VII and age

---

[36] Docket Entry 28, Werner Deposition at 18-19.

[37] For instance, in her deposition, Adrianne Pedro ("Pedro") testified that when she began employment with defendant in 2000, her workload was under one hundred pending or open cases assigned to her.  By 2002 to 2003, Pedro's pending cases had reached two hundred fifteen.  Docket Entry 28, Pedro Deposition at 15-16.

[38] Docket Entry 28, Swanner Deposition at 210; Gawlik Deposition at 25; Luna Deposition at 20; Pedro Deposition at 78.

[39] **Id.**, Pedro Deposition at 75; Gawlik Deposition at 26.

[40] **Id.**, Hill Deposition at 43; Werner Deposition at 30.

[41] **Id.**, Hill Deposition at 45; Werner Deposition at 28-29.

[42] **Id.**, Swanner Deposition at 103-104.

7

discrimination in violation of the ADEA.  On February 24, 2005, the EEOC issued plaintiff a

"right to sue letter."[43]

## VI. <u>Analysis</u>

### A. Summary judgment standard.

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56

provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.[44]

Rule 56 requires that there be no genuine issue of material fact.  A fact is material if it

might affect the outcome of the lawsuit under the governing law.[45]  A dispute concerning a

material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.[46]  Therefore, summary judgment is proper if, under governing laws, there is

only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a

factual issue in favor of either party, summary judgment should not be granted.[47]

The movant on a summary judgment motion bears the initial burden of informing the

---

[43] Docket Entry 1, attachments.

[44] Fed. R. Civ. P. 56(c); **<u>Celotex Corp. v. Catrett</u>**, 477 U.S. 317, 322 (1986).

[45] **<u>Anderson v. Liberty Lobby, Inc.</u>**, 477 U.S. 242, 248 (1986); **<u>Thomas v. LTV Corp.</u>**, 39 F.3d 611, 616 (5th Cir. 1994).

[46] **<u>Anderson</u>**, 477 U.S. at 248; **<u>Wise v. E.I. DuPont De Nemours & Co.</u>**, 58 F.3d 193, 195 (5th Cir. 1995).

[47] **<u>Anderson</u>**, 477 U.S. at 249.

court of the basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[48]  To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[49]  Regardless of whether the movant accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[50]  Once the movant has carried that burden, the burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[51]

Importantly, the nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings.[52]  Rather, the nonmovant must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already

---

[48] **Celotex Corp.**, 477 U.S. at 323.

[49] **Edwards v. Aguillard**, 482 U.S. 578, 595 n.16 (1987) (citing **Celotex Corp.**, 477 U.S. at 323).

[50] **Celotex Corp.**, 477 U.S. at 323.

[51] **Anderson**, 477 U.S. at 257.

[52] Fed. R. Civ. P. 56(e); **Anderson**, 477 U.S. at 250; **State of Texas v. Thompson**, 70 F.3d 390, 393 (5th Cir. 1995).

in the record, set out specific facts showing the existence of a genuine issue for trial.[53]  When determining whether a genuine issue of material fact exists, the court "will not weigh the evidence or evaluate the credibility of witnesses."[54]  The court will look at the record in the light most favorable to the nonmovant drawing all inferences most favorable to that party.[55] Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."[56]  Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his or her case on which he or she bears the burden of proof at trial.[57]  Accordingly, summary judgment motions permit the court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[58]

**B. Defendant's objections to plaintiff's summary judgment evidence.**

In its reply to plaintiff's response, defendant objected to certain parts of plaintiff's summary judgment proof.  Relevant to defendant's objections, Rule 56(e) instructs:

> Supporting and opposing affidavits shall be made on personal

---

[53] **Celotex Corp.**, 477 U.S. at 324; **Fields v. City of South Houston, Texas**, 922 F.2d 1183, 1187 (5th Cir. 1991); **Neff v. American Dairy Queen Corp.**, 58 F.3d 1063, 1065 (5th Cir. 1995).

[54] **Caboni v. General Motors Corp.**, 278 F.3d 448, 451 (5th Cir. 2002).

[55] **Hibernia Nat'l Bank v. Carner**, 997 F.2d 94, 97 (5th Cir. 1993).  **See also Little v. Liquid Air Corp.**, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a nonmovant cannot discharge her burden with doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence).

[56] **See Douglass v. United Services Auto. Ass'n**, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing **Forsyth v. Barr**, 19 F.3d 1527, 1533 (5th Cir. 1994)).

[57] **Celotex Corp.**, 477 U.S. at 322 ("In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of the proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").  **Id.** at 323.

[58] **See Fields**, 922 F.2d at 1187.

> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein. Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith. The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits....

Under Rule 56(e) affidavits offered to support a summary judgment motion must meet three requirements.  The affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated in the affidavit.[59]  If the affidavit fails to meet any of these requirements, a motion to strike that sets forth specific objections is the proper method for the opposing party to challenge the affidavit.[60]  An opposing party may also move to strike an affidavit supporting a motion for summary judgment that contains conclusory statements or statements that constitute hearsay.[61]  If only portions of the affidavit are objectionable, the court should disregard the inadmissable portions and consider the remaining parts of the affidavit in determining the motion for summary judgment.[62]  A court has broad discretion to grant or deny a motion to strike.[63]

In this case, defendant has not filed a motion to strike, but instead included a section in its reply wherein it objected to plaintiff's summary judgment evidence.  Defendant identified specific statements in plaintiff's exhibits as objectionable, but did not clearly set forth the legal

---

[59] **Casas Office Machines, Inc. v. Mita Copystar America, Inc.**, 42 F.3d 668, 682 (1st Cir. 1984).

[60] **Rushing v. Kansas City Southern Ry. Co.**, 185 F.3d 496, 506 (5th Cir.1990), superceded by statute on other grounds as noted in **Mathis v. Exxon Corp.**, 302 F.3d 448, 459 n. 16 (5th Cir.2002).

[61] **Spector v. Experian Information Services Inc.**, 321 F.Supp.2d 348, 352 (D.Conn. 2004).

[62] **Lee v. National Life Assurance Co. of Canada**, 632 F.2d 524, 529  (5th Cir.1980).

[63] **Canady v. Erbe Elektromedizin GmbH**, 384 F.Supp.2d 176, 180 (D.D.C. 2005).

11

authority for its objections to each statement.

**1. Pedro's sworn statement, plaintiff's Exhibit 2.**

Defendant objects to parts of Pedro's sworn statement offered in support of plaintiff's resistance to summary judgment, and asks that the identified portions not be considered in determining the motion for summary judgment.[64]   In particular, defendant objects to Pedro's statements: (1) in paragraph 2, that in her opinion, plaintiff worked as hard, if not harder, than she did; (2) in paragraph 3 (entire paragraph), questioning defendant's stated reason for discharging plaintiff and describing the increase in workload that the claims adjusters experienced; (3) in paragraph 4, to the extent that she purports to identify the feelings, workload, and abilities of coworkers; and (4) in paragraph 5, to the extent that she purports to show how other adjusters managed their work loads and her opinion that additional desk audits would have uncovered missed demands by other adjusters.   Defendant objects to paragraphs 6-8 of Pedro's sworn statement in their entirety.   These paragraphs contain Pedro's assertions that defendant should have counseled plaintiff before terminating his employment, that other employees missed time demands and were put on progressive discipline, that five new claims adjusters were hired who were younger than forty years of age, and that only one other employee, who was in her late-fifties, was audited and consequently fired.

Defendant argues that the cited paragraphs are "based on speculation and/or hearsay and lack any foundation for personal knowledge of the facts asserted."[65]   According to defendant the

---

[64] Docket Entry 32.

[65] Docket Entry 32 at 2.

statements are nothing more than Pedro's conclusory allegations.[66]

It is undisputed, that Pedro worked as a claims adjuster under the supervision of Hill at the relevant time preceding plaintiff's termination from employment. Accordingly, Pedro has personal knowledge of defendant's disciplinary procedures, the workload of claims adjusters, and the overall morale of the adjusters during the relevant time period. Pedro worked in the same office under the same supervisor, Hill, with plaintiff. She has personal knowledge of plaintiff during the pertinent time period, and can give her opinion as to his work habits and performance relative to her own. To the extent that Pedro gives her opinion as to disciplinary measures that defendant should have taken, Pedro's opinion will be considered based on her experiences with defendant, but in light of the fact that she was not in a supervisory position. Her statement will be weighed accordingly. Based on the foregoing, defendant's objections to Pedro's sworn statement, plaintiff's Exhibit 2, will be **OVERRULED**.

**2. Pedro's sworn statement, plaintiff's Exhibit 8.**

Defendant also objects to Pedro's sworn statement concerning the age of certain coworkers, plaintiff's Exhibit 8. Defendant bases its objection on the "same reasons" that it objected to plaintiff's Exhibit 2.[67]

As noted above, Pedro is competent to give testimony based on her personal experience and observations. Pedro states that she worked with the individuals identified in Exhibit 8, and her opinion as to the age of the coworkers is based on her observations and experience. Accordingly, defendant's objection to plaintiff's Exhibit 8 will be **OVERRULED**.

---

[66] **Id.** at 1.

[67] **Id.**

13

### 3. Notzon-Luna's sworn statement, plaintiff's Exhibit 9.

Defendant also objects to Notzon-Luna's sworn statement concerning the age of other coworkers because plaintiff did not identify Notzon-Luna in his discovery disclosures as an individual with discoverable information.[68]  The Court has the discretion to sustain defendant's objection and strike Notzon-Luna's sworn statement.[69]  However, defendant does not allege that plaintiff's failure to identify Notzon-Luna as a potential witness in his initial disclosure was intentional or done for an improper purpose.  Furthermore, the affidavit is limited to identifying four employees who Notzon-Luna identifies as being over forty years of age, and provides no other information.  Defendant does not dispute that these individuals were not over forty years of age at the relevant time period.  Consequently, plaintiff's failure to identify Notzon-Luna in his initial disclosures is a harmless error, and defendant's objection to plaintiff's Exhibit 9, will be **<u>OVERRULED</u>**.

### 4. Notes created during Hill's deposition, plaintiff's Exhibit 3.

Finally, defendant objects to plaintiff 's Exhibit 3, which consists of notes created by plaintiff's counsel and Hill during Hill's deposition while reviewing Gawlik's desk audit.  It is unclear from the face of the document exactly what information it purports to provide.  Plaintiff's response to defendant's motion for summary judgment does not directly discuss plaintiff's Exhibit 3 and only cites to Exhibit 3 twice in conjunction with Hall's deposition testimony.  At best, the exhibit is cumulative of Hall's deposition testimony.  At worst, it provides erroneous

---

[68] Docket Entry 32, Exhs. 13, 14.

[69] **<u>See</u>** Fed. R. Civ. P. 37(c).

14

information concerning Gawlik's desk audit.[70]   Accordingly, defendant's objection will be

**SUSTAINED**.

**C. Unlawful employment practices under the ADEA**.

In 1967, Congress passed the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment."[71]   To accomplish its purposes, the ADEA makes certain employment practices unlawful.  Among other things, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[72]

The ADEA provides for enforcement of its provisions through private suits or action by the EEOC.  Before an aggrieved individual can bring a suit under the ADEA, he or she must initially file a charge with the EEOC alleging unlawful discrimination.[73]   The charge must be filed within one hundred eighty days after the alleged unlawful action or practice occurred (unless § 633, addressing Federal actions upon the commencement of a State proceeding, applies).[74]   If the EEOC commences an action against the employer, the individual's right to sue

---

[70] **See** Docket Entry 32 at 2.

[71] 29 U.S.C. § 621(b).

[72] 29 U.S.C. § 623(a)(1).

[73] 29 U.S.C. § 626(d).

[74] 29 U.S.C. § 626(d)(1), (2).

is terminated.[75]  However, if the EEOC dismisses the charge or terminates proceedings, the EEOC must notify the aggrieved individual of its decision and his or her right to sue.  The individual then has ninety days from the receipt of the notice to commence an action against the employer.[76]

A plaintiff-employee may present an employment discrimination suit under the ADEA by using direct evidence of discrimination,[77] circumstantial evidence, or both.[78]  "If the plaintiff [-employee] produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus."[79]  If the plaintiff-employee does not produce direct evidence of discrimination, the case is subject to a burden shifting standard.[80]

First, the plaintiff-employee alleging the discrimination bears the burden of proving a *prima facie* case of discrimination based on an adverse employment action.[81]  The *prima facie* case raises a rebuttable presumption of discrimination by the employer.[82]  The burden then shifts to the employer to articulate a legitimate reason for the adverse action.  If the employer satisfies

---

[75] 29 U.S.C. § 626(c)(1).

[76] 29 U.S.C. § 626(e); **see also** 29 C.F.R. § 1626.17.

[77] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  **Sandstad v. CB Richard Ellis, Inc.**, 309 F.3d 893, 897 (5th Cir.2002).

[78] **Id.** at 896.

[79] **Id.** at 897.

[80] **Cheatham v. Allstate Ins. Co.**, ---F.3d---, 2006 WL 2686755, at *3 (5th Cir. 2006) (citing **Meinecke v. H & R Block of Houston**, 66 F.3d 77, 83 (5th Cir.1995)); **see also McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973) (setting out the burden shifting framework).

[81] **Cheatham**, 2006 WL 2686755, at *3.

[82] **Meinecke v. H & R Block of Houston**, 66 F.3d 77, 83 (5th Cir. 1995).

16

this burden, the presumption of discrimination disappears, and the burden then shifts back to the plaintiff-employee to show that the alleged nondiscriminatory reason was mere pretext for discriminatory conduct,[83] or that the defendant's nondiscriminatory reason was only one of the reasons for its conduct, while plaintiff's age was another motivating factor in the conduct (mixed motive alternatives).[84]  The mixed motives question is only reached after the plaintiff has made a *prima facie* showing, and defendant has responded with a legitimate reason for the adverse action.  If the plaintiff shows that the protected characteristic was a motivating factor in the adverse action, which may be achieved through circumstantial evidence, the defendant may show that the same adverse employment decision would have been made regardless of discriminatory animus.[85]  The ultimate burden of persuasion remains with the plaintiff-employee throughout the case.[86]

In order to establish a *prima facie* case of age discrimination in violation of the ADEA, the plaintiff-employee must establish: (1) he or she is a member of a protected class; (2) he or she was qualified for the position that she held; (3) he or she was discharged; and (4) he or she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his or her age.[87]

**D. ADEA burden shifting analysis.**

---

[83] **Id**.

[84] **Cheatham**, 2006 WL 2686755, at *3.

[85] **Keelan v. Majesco Software, Inc.**, 407 F.3d 332, 341 (5th Cir. 2005).

[86] **Cheatham**, 2006 WL 2686755, at *3.

[87] **Rachid v. Jack in the Box, Inc.**, 376 F.3d 305, 309 (5th Cir. 2004).

Plaintiff has not presented direct evidence of age discrimination by defendant. The parties agree plaintiff relies on circumstantial or inferential evidence, and therefore, his case is subject to the burden shifting analysis.

**1. Plaintiff's *prima facie* case.**

There is no dispute that plaintiff has established the first and third elements of his *prima facie* case. Defendant concedes that plaintiff was forty-two years of age and within the protected class of the ADEA at the time defendant terminated his employment.[88] However, defendant argues that plaintiff has failed to provide adequate proof to establish the second and fourth elements of his *prima facie* case. Specifically, defendant contends that plaintiff was not qualified for his position at the time defendant terminated his employment. Defendant further contends that plaintiff has failed to offer evidence that he was replaced by someone outside the protected class, treated less favorably than similarly situated employees, or discharged because of his age.

Defendant bases its argument that plaintiff was not qualified for his position on the fact that the desk audit revealed that he had an unacceptable number of missed settlement demands, and plaintiff's statements to Hill that he was having difficulty with his workload. Defendant argues that because plaintiff was unable to keep up with the higher workload, he was not qualified for the position. Defendant misconstrues the law in the Fifth Circuit concerning this element of a *prima facie* case for age discrimination.

The Fifth Circuit holds that a plaintiff can meet the qualification element of a *prima facie* case of age discrimination by showing that he or she continued to hold the necessary

---

[88] Docket Entry 28 at 6.

qualifications for the position at the time of the adverse employment action.[89]  The plaintiff can establish that he or she retains the necessary qualifications for employment if he or she has not "suffered physical disability or loss of a necessary professional license or some other occurrence that rendered [him or her] unfit for the position for which [he or she] was hired."[90]

Plaintiff worked for defendant for over ten years.  He began employment as a policy service representative, and after nine months, became a claims adjuster.[91]  Plaintiff testified at his deposition that he needed a license as a claims adjuster and took continuing education courses to maintain his license.  He took thirty hours of continuing education classes every two  years.[92] There is no evidence in the record that plaintiff suffered a physical disability, loss of license, or other occurrence which rendered him unqualified for the position.  Accordingly, plaintiff has established that he was qualified for his position.

Furthermore, plaintiff has provided sufficient evidence that he was replaced by a person or persons who were younger than him.  It is undisputed that defendant instituted a program to recruit college graduates with specific business skills to become employees.  Graduates who joined the claims adjuster section were known as associate adjusters.[93]  The new recruits were placed on a "fast track" to becoming claims adjusters and did not follow the normal progression of entering into the immediate resolution unit, then being trained, and promoted to claims

---

[89] **Bienkowski v. American Airlines, Inc.**, 851 F.2d 1503, 1506 (5th Cir. 1988).

[90] **Id.** at n.3.

[91] Docket Entry 28, Exh. 1 at 25-26.

[92] **Id.** at 26.

[93] Docket Entry 29, Swanner Deposition at 94, 104.

representatives and finally claims adjusters.  Pedro testified that defendant brought into the

department five new claims adjusters who were younger forty years of age.[94]  Accordingly,

plaintiff has provided sufficient evidence to show that he was replaced by a younger person or

someone outside of the protected class.

Plaintiff established his *prima facie* case of age discrimination.  The burden shifts to

defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's

employment.

### 2. Defendant's nondiscriminatory reason for terminating plaintiff's employment.

Defendant avers that it discharged plaintiff because he missed two time limit demands

and eighteen untimed demands.  Plaintiff came to Hill with a coverage question.  Hill reviewed

the issue and forwarded it to Swanner who identified the missed time limit demand.[95]  Pursuant

to company policy, Hill and two other managers conducted a desk audit of plaintiffs files, and

discovered that plaintiff had missed two time limit demands and eighteen untimed demands.  Hill

reported the results of the desk audit to Swanner, Rosen, and Werner.  Based on the number of

missed deadlines and the potential liability from the two missed time limit demands, Hill and the

others decided to terminate plaintiff's employment.  According to Hill, the decision to terminate

plaintiff's employment had nothing to do with plaintiff's age.[96]

Defendant has articulated a legitimate, nondiscriminatory reason for terminating

plaintiff's employment.  The burden shifts to plaintiff to show that the reason is a pretext for

---

[94] Docket Entry 29, Pedro Deposition at 52-53.

[95] Docket Entry 28, Exh. 3 at 29.

[96] **Id.**, Exh. 2.

discrimination or that the defendant's nondiscriminatory reason was only one of the reasons for its conduct while plaintiff's age was another motivating factor.

### 3. Plaintiff's evidence of pretext.

Plaintiff has offered sufficient evidence to raise a fact question as to whether defendant's reason for terminating his employment was a pretext for age discrimination.  First, plaintiff worked for defendant for over ten years.  All but nine months of that time, plaintiff worked in the position of claims adjuster.  Over the course of his employment, plaintiff received favorable performance evaluations, raises, and bonuses, and he did not have an active disciplinary action at the time of his discharge.  Hill testified in his deposition that he, Rosen, Swanner, and Werner did not even discuss plaintiff's work history with the company when they decided to terminate plaintiff's employment.[97]

According to Hill, plaintiff's failure to timely address time limit demands potentially subjected defendant to liability beyond its contractual limits.  However, there is no assertion in the record that plaintiff's actions actually caused financial harm to defendant.  Furthermore, Pedro, who was younger than plaintiff,  reported to her supervisor that she had missed a time limit demand, and she was not terminated or disciplined, nor subjected to a desk audit.[98]  Another younger claims adjuster, Melissa Anderson ("Anderson") missed a time limit deadline and was not terminated.[99]  Management performed a desk audit of her files, and issued her a Step 2

---

[97] Docket Entry 28, Exh. 3 at 81.

[98] Docket Entry 29, Pedro Deposition at 22-23.

[99] Defendant suggests that information pertaining to Anderson's desk audit is outside the discovery time limits set forth in the District Court's Order dated February 23, 2006.  Docket Entry 24.  However, the Order addresses a motion to compel the production of documents and limits the time period from which defendant must produce certain documents.  It does not address information to be provided by deposition.  Furthermore, defendant

written warning.[100]  Likewise, defendant did not terminate Gawlik, who was also younger than

plaintiff, after performing a desk audit on her files.  The desk audit showed that Gawlik missed

thirteen untimed demands and paid two claims after the statute of limitations on the claims had

passed, thereby causing defendant to pay claims after it was no longer legally obligated to pay.[101]

Finally, the majority of employees that defendant discharged during the relevant period

were over the age of forty.  Plaintiff identified Cynthia Segura, Margie Lopez, Myrtle Campbell

(quit in lieu of termination), Cindy Young, Gil Eastland, Alan Hibler, and Nina Wolfe as the

older former employees discharged (or slated to be discharged) by plaintiff within one year of

plaintiff's discharge.[102]

Taken as a whole, plaintiff's evidence raises a fact issue as to whether defendant's

articulated reason for terminating plaintiff's employment was mere pretext for age

discrimination.  In light of defendant's campaign to hire young college graduates, its termination

of older employees, and its decisions not to terminate younger employees for similar company

policy violations, a reasonable jury could determine that defendant's reason for terminating

plaintiff's employment lacked credence.  The jury could choose to believe plaintiff and not Hill,

Swanner, or Werner.

Defendant contends that plaintiff must be able to prove that defendant treated similarly

situated coworkers under the age of forty more favorably than defendant treated him to show that

---

did not file a motion to strike this portion of plaintiff's summary judgment evidence.

[100] Docket Entry 29, Hill Deposition at 33-34, 36-37.

[101] **Id.** at 68, 87-88.

[102] Docket Entry 29 at 5 n.11; Swanner Deposition at 31, 7-80, 83; Exh. 8; Exh. 9.

defendant's reason for terminating his employment was pretextual.  Defendant argues that plaintiff failed to show that any claims adjuster younger than his class received more favorable treatment under "nearly identical" circumstances.

To establish disparate treatment under the ADEA, plaintiff must show that defendant gave preferential treatment to another employee under "nearly identical" circumstances.[103]  In other words, plaintiff must show that the conduct for which he was discharged was nearly identical to the conduct of another person who was retained.[104]

Plaintiff identified Gawlik and Anderson as similarly situated, younger employees who defendant treated more favorably.  It is undisputed that Gawlik and Anderson  occupied the claims adjuster position at the relevant time, and had the same supervisors as plaintiff.  All three employees had the same job duties and responsibilities.  They all experienced the dramatic increase in workload.  Accordingly, Gawlik and Anderson were similarly situated to plaintiff.

Defendant performed desk audits on all three employees and discovered violations of company policies.  Plaintiff's desk audit showed that he missed two time limit demands and eighteen untimed demands.  Gawlik's audit showed that she had missed two statute of limitations issues, resulting in payment of the claims after the limitation periods ended, and thirteen untimed demands.  Anderson's audit showed that she missed one time limit demand.  Of the three, defendant discharged plaintiff.  The younger employees received lesser discipline in the form of warnings.

A reasonable fact finder considering this evidence could determine that the circumstances

---

[103] **Wyvill v. United Companies Life Ins. Co.**, 212 F.3d 296, 304 (5th Cir. 2000).

[104] **Smith v. Wal-Mart Stores**, 891 F.2d 1177, 1180 (5th Cir. 1990).

of the employees were "nearly identical."  They were engaged in the same job, during the same time period, under the same supervisors.  All three were subjected to desk audits that revealed violations of company policy in the form of missed demand deadlines.  The fact finder could also determine that the quantity of missed deadlines did not reach a level as to appreciably affect a finding of nearly identical circumstances.

Plaintiff additionally identifies Pedro as being similarly situated.  Pedro was also a claims adjuster during the relevant time period and had the same supervisors.  She struggled under the increased workload as well, and missed time limit demand deadlines.  Pedro testified that she informed a manager that she had missed a demand deadline, but Pedro was never subjected to a desk audit and did not receive any discipline.  Accordingly, for the same reasons stated above, a reasonable fact finder could determine that Pedro and plaintiff were similarly situated for comparison purposes in this ADEA action.

Defendant argues that the Court should be guided by **Bryant v. Compass Group USA Inc.**,[105] and determine that plaintiff has failed to offer evidence of disparate treatment.  In **Bryant**, the plaintiff brought a Title VII action alleging discrimination based on race.  The plaintiff, a white cook for a catering company, was terminated from employment for taking money from a gift table during a catered event.[106]  The plaintiff argued that the defendant catering company treated a Hispanic employee more favorably.  The Hispanic employee allegedly took alcoholic beverages, food, and table decorations and was not discharged or otherwise

---

[105] **Bryant v. Compass Group USA Inc.**, 413 F.3d 471, 478-79 (5th Cir. 2005).

[106] **Id.** at 476.

disciplined.[107]  The Court determined that a reasonable jury could find that the two employees were similarly situated.  However, it found a significant difference between the plaintiff's theft from a client, and the other employee's pilfering from the company.  The key distinction was that the plaintiff's actions could result in a significant loss of business and clients along with exposure to civil liability, while the other employee's theft only damaged the defendant to the value of the items taken. [108]  Further, the plaintiff admitted his theft to the police, while the second employee did not.  The Court concluded that no reasonable jury could find the two events, nearly identical.[109]

　　**Bryant** is unhelpful in the instant case because the factual situations are so dissimilar. Unlike **Bryant**, all the employees in this case were engaged in the same employment duties with the same responsibilities.  All were under increased workloads and consequently, violated company policies concerning deadlines.  Most importantly, the Court in **Bryant** stressed that the misconduct of the comparative employees would result in vastly different consequences for the employer because the plaintiff's misconduct could be detrimental to future business.  In the instance case, the conduct of each employee had the same potential effect on the employer.  The missed demand deadlines could result in liability to the company in excess of policy limits. Unlike **Bryant**, plaintiff's conduct in this case did not subject defendant to consequences different or more extreme in nature than his coworkers' conduct.  Accordingly, **Bryant** is not applicable to this case.

---

[107] **Id.** at 478.

[108] **Id.**

[109] **Id.** at 479.

**4. Mixed Motive.**

In its motion for summary judgment and its reply, defendant did not argue that even if plaintiff carried his burden on the pretext issue, that it would have still discharged plaintiff regardless of discriminatory animus.  Defendant has not provided evidence in the form of an affidavit or any other evidence  making this assertion.  Defendant vigorously contended that plaintiff's age played no part in its determination to terminate his employment, and prosecuted its motion and case on that basis.  Accordingly, defendant has not carried its burden to show that it would have terminated plaintiff regardless of discriminatory motives.

**E. Conclusion**

Based on the foregoing, plaintiff has presented a *prima facie* case of discrimination in violation of the ADEA.  He has also presented sufficient evidence to create fact issues concerning defendant's nondiscriminatory reason for terminating plaintiff's employment. Genuine issues of material fact remain for trial.  Therefore, the District Court should **DENY** defendant's motion for summary judgment.

## VII. Recommendation

Based on the foregoing, it is my recommendation that defendant's motion for summary judgment (Docket Entry 28) be **DENIED**.

## VIII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those

not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[110]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[111]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[112]

      **SIGNED** on October 25, 2006.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[110] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[111] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[112] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).